IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ALIVIA L. GREENFIELD and JOSHUA GREENFIELD,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, individually.<br><br>    Defendants. | Case No. 18 CV 50331<br><br>Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

  This case arises from alleged medical negligence. For the reasons stated herein, Defendants' Motion to Dismiss, Transfer, or Issue Declaratory Judgment (Dkt. No. 17) is denied.

    **I. BACKGROUND**

  Plaintiffs Alivia Greenfield ("Ms. Greenfield") and Joshua Greenfield ("Mr. Greenfield") are a married couple who reside in Illinois. Defendant The Monroe Clinic, Inc. ("TMC") is a Wisconsin corporation that has its principal place of business in Wisconsin, but operates multiple clinics in different states. TMC does business in Freeport, Illinois as a medical clinic under the name "Highland Women's Care" ("the Illinois Clinic"). Defendant Dr. Joseph Ehle is an obstetrician and gynecologist who practices medicine in both Illinois and Wisconsin. Dr. Ehle is an employee

of TMC and practices at both the Illinois Clinic and another one of TMC's clinics in Monroe, Wisconsin ("the Wisconsin Clinic").

In January of 2015, Ms. Greenfield went to the Illinois Clinic, seeking treatment for irregular menstruation. Her Complaint does not specify which doctor she saw on that visit. Ms. Greenfield returned to the Illinois Clinic in June and July of 2015, during which visits Dr. Ehle treated her. On July 2, 2015, Dr. Ehle ordered Ms. Greenfield an ultrasound that revealed that she had an enlarged uterus and an abnormal endometrium. Based apparently on the concern that Ms. Greenfield might have endometrial cancer, Dr. Ehle recommended that she undergo a Laproscopic Supracervical Hysterectomy ("LSCH"), in which a woman's uterus is removed. Ms. Greenfield consented to this procedure.

On July 22, 2015, Dr. Ehle performed the LSCH on Ms. Greenfield in the Wisconsin Clinic. Dr. Ehle removed her uterus through a process called morcellation—breaking the uterine tissue down into tiny fragments and then removing as much of the fragmentation as possible. Dr. Ehle sent some of those fragments for testing; the pathologist concluded Ms. Greenfield had an endometrial tumor. Dr. Ehle then referred Ms. Greenfield to a gynecological oncologist. Ms. Greenfield saw the oncologist on September 15, 2015, and underwent a procedure to remove approximately 30 sarcomatous tumors throughout her abdominal

cavity. Plaintiffs assert that Dr. Ehle's decision to morcellate Ms. Greenfield's uterus with potentially malignant cells therein (rather than remove the uterus intact) caused malignant tumors to metastasize throughout her abdomen. Plaintiffs allege that Dr. Ehle's negligence caused Ms. Greenfield's malignant sarcoma to advance from stage I to stage III, which is not curable.

Plaintiffs first filed suit on this matter on July 17, 2017. *See Greenfield v. The Monroe Clinic, Inc.*, No. 17-cv-50206 (N.D. Ill.). On October 16, 2017, Plaintiffs voluntarily dismissed their action without prejudice under Federal Rule of Civil Procedure 41, as Defendants had not yet filed an answer or motion for summary judgment. Plaintiffs filed this suit on October 16, 2018, and assert three counts against Defendants: (1) medical negligence; (2) failure to obtain informed consent; and (3) loss of spousal consortium.

Defendants now move the Court for relief on several alternate grounds: (1) dismissal for improper venue under 28 U.S.C. § 1391(b) and Federal Rule of Civil Procedure 12(b)(3); (2) transfer venue to the U.S. District Court for the Western District of Wisconsin under 28 U.S.C. § § 1391(b) and 1406(a); and (3) declaratory judgment establishing the application of Wisconsin law to this case and dismissal under Federal Rule of Civil Procedure 12(b)(6) for exceeding the Wisconsin statute of limitations.

## II. <u>DISCUSSION</u>

### A. Venue

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal when a plaintiff files suit in an improper venue. Ordinarily when considering a motion to dismiss, a district court assumes the truth of all well-pleaded allegations in a plaintiff's complaint. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808 (7th Cir. 2016). This rule is "less absolute" when considering a motion to dismiss under Rule 12(b)(3)—the district court assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits. *Id*. at 809. Once a defendant challenges venue, it is the plaintiff's burden to establish that venue is proper in the district in which he or she filed. *Harlem Ambassadors Prods., Inc. v. ULTD Entm't LLC*, 281 F. Supp. 3d 689, 696 (N.D. Ill. 2017). A court may also transfer, rather than dismiss, when another venue is proper within the federal court system. *See Deb*, 832 F.3d at 805 n.2; 28 U.S.C. § 1406(a).

The federal venue statute, 28 U.S.C. § 1391, provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any

judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Determining "where a claim arose and where venue is proper is, at best, an imprecise task." *Dutch Valley Growers, Inc. v. Rietveld*, 314 F.R.D. 293, 295 (N.D. Ill. 2016) (citing *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009)). District courts have a substantial amount of discretion in determining venue, which is an inquiry focused on fairness and convenience of the parties as opposed to constitutional considerations. *Id.*

Plaintiffs allege that venue is proper in the Northern District of Illinois because a substantial part of the events giving rise to their claims occurred here. Defendants urge that this District is an improper venue because "all of the alleged negligent events arose in Monroe, Wisconsin," rendering the Western District of Wisconsin the proper judicial district for this lawsuit. (Defs.' Mot. at 13, Dkt. No. 19.) Defendants' theory misapplies the legal standard and misconstrues the Complaint. While the LSCH took place in Monroe, Wisconsin, that one procedure was not the extent of Ms. Greenfield's relationship with TMC or Dr. Ehle. The test for a determination of proper venue under Section 1391(b)(2) "is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to

5

the claim occurred in a particular district." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015). To be substantial, "it is enough to establish that the events that took place in Illinois were part of the historical predicate for the instant suit." *Specht*, 660 F. Supp. 2d at 866.

In this case, Plaintiffs have clearly alleged that events that took place in Illinois were part of the "historical predicate" for their claims. Ms. Greenfield was treated in the Illinois Clinic three times—in January, June, and July of 2015—before Dr. Ehle performed the LSCH in Wisconsin. Moreover, Plaintiffs allege that these visits were the reason Dr. Ehle performed the LSCH. (*See* Compl. ¶ 9 ("After visits with Dr. Ehle on June 18, 2015 and July 2, 2015 [at the Illinois Clinic], Dr. Ehle recommended that Alivia undergo an LSCH… on July 22, 2015, to which Alivia consented.").) Defendants do not dispute that these office visits took place. Indeed, Defendants submitted an affidavit and medical records attesting to the fact that at Ms. Greenfield's July 2, 2015, appointment with Dr. Ehle at the Illinois Clinic, the two "discussed treatment options, including… a hysterectomy." (Def.'s Mot. at 7-8; *see also* Greenfield Medical Records, Ex. 4 to Aff. of Sean Gaynor, Dkt. No. 20-4.)

Dr. Ehle's treatment of Ms. Greenfield in Illinois thus forms the essential "historical predicate" and "close nexus" to Plaintiffs' claims. *See Johnson v. Creighton Univ.*, 114 F. Supp.

3d 688, 696 (N.D. Ill. 2015). Ultimately, Ms. Greenfield would not have suffered the alleged medical negligence and failure to obtain informed consent had Dr. Ehle not treated and counseled her as he did in Illinois; neither would Mr. Greenfield have suffered the alleged loss of consortium. Therefore, venue is proper in this District under 28 U.S.C. § 1391(b). The Court denies Defendants' motion to dismiss or transfer for improper venue and turns to their motion to dismiss for exceeding the applicable statute of limitations.

### B. Choice of Law

Defendants style the second half of their motion as a "Motion for Declaratory Judgment Establishing the Application of Wisconsin law to this case, and, consequently dismissing this matter on the grounds it was commenced untimely and in violation of the statute of limitations pursuant to Fed. R. Civ. p. 12(b)(6)." (Defs.' Mot. at 1.)

As a preliminary matter, a "Motion for Declaratory Judgment" is procedurally inappropriate, because Defendants have not filed any counterclaims in this case. The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction ... upon the filing of an appropriate pleading, [a court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Though

7

"appropriate pleading" is not defined, the Supreme Court has suggested that a party may not merely *move* for for relief under the Declaratory Judgment Act; it must bring an *action* for a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an *action* under the Declaratory Judgment Act.") (emphasis added). While the Seventh Circuit has not addressed this issue, the Ninth Circuit has held that "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) (citing *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.,* 560 F.3d 935, 943 (9th Cir. 2009)); s*ee also* 10B Wright, Miller & Kane, Fed. Prac. and Proc. Civ. § 2768 (3d ed. 1998) (noting that "the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions"). Defendants make no mention of the Declaratory Judgment Act in their Answer or Affirmative Defenses, nor have they made any counterclaims requesting declaratory relief. Therefore, declaratory relief is unwarranted.

Defendants also request dismissal under Rule 12(b)(6) on the grounds that Plaintiffs' claims exceed the applicable statute of

limitations. The Court will therefore consider Defendants' motion as a traditional Rule 12(b)(6) motion to dismiss for failure to state a claim. In general, courts "do not dismiss claims under Rule 12(b)(6) for failure to be brought within the statute of limitations, because the statute of limitations is an affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (citation omitted). Because complaints "need not anticipate and attempt to plead around defenses," a motion to dismiss based on failure to comply with the statute of limitations should be granted only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id*. at 613-14 (citing *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005)). In other words, the plaintiff "must affirmatively plead himself out of court; the complaint must plainly reveal that [the] action is untimely under the governing statute of limitations." *Id*. at 614 (internal quotation marks omitted).

Defendants assert that Wisconsin law applies to this action, which renders the case time-barred. Plaintiffs urge that Illinois law applies, in which case the action is timely. Therefore, the Court must first perform a choice of law analysis before it can assess the merits.

Before "entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference

between the relevant laws of the different states." *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992). In this case, there is clearly a difference, since the application of Wisconsin law would reach a different outcome than Illinois law. The applicable Wisconsin statute of limitations is three years from the date of the injury. Wis. Stat. Ann. § 893.55(1m)(a). Dr. Ehle performed the LSCH on Ms. Greenfield on July 22, 2015; thus the statute of limitations would have expired on July 22, 2018. Wisconsin law also allows a party to sue one year from the date the injury was discovered or should have been discovered. Wis. Stat. Ann. § 893.55(1m)(b). Plaintiffs discovered the injury at least by the time they first filed suit on this matter on July 17, 2017, which gave them a deadline of July 17, 2018, to file under the "discovery" option. Plaintiffs missed the Wisconsin deadline by filing the current action on October 16, 2018.

Under Illinois law, however, this action is timely. Illinois tolling rules allow a plaintiff who voluntarily dismisses a case to commence a new action within one year or within the remaining period of limitation, whichever is greater. *See* 735 ILCS 5/13–217; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). Here, Plaintiffs voluntarily dismissed this action on October 16, 2017, and refiled exactly one year later, on October 16, 2018. Defendants concede that Plaintiffs' case can proceed under the Illinois tolling statute. Therefore, there is a difference between

the relevant laws of the different states, and the Court turns to the choice of law analysis.

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The Illinois Supreme Court uses the "most significant relationship" test for choosing the appropriate law in tort cases. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901 (Ill. 2007). Illinois choice of law rules presume that the law of the place of injury controls unless another state has a "more significant relationship" with the occurrence and the parties. *Id*. at 903. A court determines whether Illinois has the more significant relationship by examining the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the parties' domicile and place of business; and (4) the place where the relationship between the parties is centered. *Id*. at 901 (citing Restatement (Second) of Conflict of Laws § 145(2)). Illinois courts also consider the "interests and public policies of potentially concerned states… as they relate to the transaction in issue." *Fredrick*, 144 F.3d at 504 (citing *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. App. Ct. 1997)). Additionally, courts conduct "a separate choice-of-law analysis for each issue in a case… to

determine which state has the most significant contacts with that issue." *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323-24 (7th Cir. 1996); *see also Townsend*, 879 N.E.2d at 901. Therefore, the Court will assess the "most significant relationship" for each of Plaintiffs' three counts: medical negligence, failure to obtain informed consent, and loss of consortium.

First, as to the medical negligence count, the injury occurred in Wisconsin. Though Plaintiffs contend that Dr. Ehle's "negligent misdiagnosis" occurred at the Illinois Clinic, the procedure itself took place in Wisconsin. Because there is "no tort without an injury," a tort "can't be said to occur until an injury is produced—the place where the injury was inflicted." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010). The fact that the injury occurred in Wisconsin creates an initial presumption that Wisconsin law applies. Second, the conduct causing the injury occurred both in Wisconsin and Illinois. Plaintiffs allege various acts and omissions that took place in Illinois that contributed to the medical negligence, such as Dr. Ehle's failure to "perform a Dilation and Curettage (D&C) of the endometrium for examination and histologic diagnosis which would not have ruled out a malignancy and, likely, would have diagnosed it." (Compl. ¶ 12.) However, Dr. Ehle's conduct during the LSCH in Wisconsin also clearly caused the alleged injury. (*See* Compl. ¶ 19 ("The act of morsellating the uterus with the potentially malignant

cells therein while within Alivia's body was the cause of the metastasis of the malignant tumor throughout her abdomen.").) Thus, this factor provides only modest support for applying Illinois law. Third, regarding domicile: Plaintiffs are both Illinois residents. While Dr. Ehle is a Wisconsin resident, he holds a license to practice medicine in Illinois, and indeed does practice medicine at TMC's Illinois Clinic. While TMC's principal place of business is in Wisconsin, it operates an Illinois medical clinic where it solicits and treats patients. Thus, this factor weighs in favor of applying Illinois law. Finally, as for where the relationship is centered, TMC and Dr. Ehle entered into a relationship with Ms. Greenfield in Illinois. Ms. Greenfield was first treated at the Illinois Clinic several times before the procedure in Wisconsin; thus this factor weighs in favor of applying Illinois law. *See Shaneff v. United States*, No. 1:09-CV-1428, 2011 WL 1839850, at *3 (S.D. Ind. May 13, 2011) (finding that a hospital located in Illinois "entered into relationships with its patients, like [plaintiff], in Illinois").

Additionally, the interests and public policies of Illinois cut in favor of applying Illinois law to the medical negligence claim. Illinois' statute of limitations for medical malpractice claims require a plaintiff to bring an action within four years of the date the alleged malpractice occurred, or two years from when the plaintiff knew or should have known of the injury. *See Augutis*

*v. United States*, 732 F.3d 749, 752 (7th Cir. 2013); 735 ILCS 5/13-212(a). Whether the Court counts from the date of the injury (July 2, 2015) or the date Plaintiffs discovered it (using Plaintiffs' original filing date, July 17, 2017), Plaintiffs would be within Illinois' statute of limitations by filing on October 16, 2018. Dr. Ehle treated Ms. Greenfield, an Illinois resident, in Illinois under his Illinois medical license, and the State of Illinois has a particular interest in seeing that its resident is able to pursue a malpractice claim against a doctor practicing in its jurisdiction. Relatedly, "[i]n the area of compensatory damages," which Plaintiffs seek, the case law "supports the application of the law of the injured person's domicile, on the ground that that state has the greatest interest in ensuring that its residents are appropriately compensated for their injuries." *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 948 F. Supp. 747, 756 (N.D. Ill. 1996) (listing cases). Therefore, despite the fact that the medical negligence injury occurred in Wisconsin, Illinois has the most significant relationship to this claim.

Furthermore, there is a highly relevant presumption in this case that, oddly, neither party has addressed. The Restatement contains a strong presumption that the forum state will apply its own statute of limitations. *See* Restatement (Second) of Conflict of Laws § 142 ("An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would

be barred by the statute of limitations of another state[.]"). Illinois courts have adopted this presumption. *See Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (listing Illinois cases). Thus, "even when the substantive law of a nonforum state applies, Illinois courts apply the Illinois statute of limitations 'because statutes of limitations are procedural, fixing the time in which the remedy for a wrong may be sought rather than altering substantive rights.'" *Id*. at 774-74 (quoting *Freeman v. Williamson,* 890 N.E.2d 1127, 1133 (Ill. App. Ct. 2008)). Accordingly, the Court will apply Illinois law, including the Illinois statute of limitations, to the medical negligence count.

The next two counts, failure to obtain informed consent and loss of consortium, can be dispensed with quickly. The failure to obtain informed consent happened in Illinois. The Complaint alleges that Dr. Ehle "failed to inform [Ms. Greenfield] of the risks and alternatives to the procedure" during her July 2, 2015, visit to the Illinois Clinic. (Compl. ¶¶ 9-10, 12-13.) Mr. Greenfield's loss of spousal consortium also occurred in Illinois. *See Wright v. Minter*, 736 F. Supp. 1024, 1028 (W.D. Mo. 1990) ("[T]he majority view, and the more recent trend, is that the law of the family domicile governs a conflicts question in an action for loss of either spousal or parental consortium."). Because Illinois was the place of injury, and Wisconsin does not have a more significant relationship with the occurrence and the parties,

Illinois has the most significant relationship to these counts. *See Townsend*, 879 N.E.2d at 903. The Court therefore will apply Illinois law to these counts as well, and deny Defendants' motion to dismiss for failure to state a claim.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss, Transfer, or Issue Declaratory Judgment (Dkt. No. 17) is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 5/23/2019